## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**DEANNA S.,**

      **Plaintiff,**

**v.**                            **Case No.: 2:24-cv-00358**

**LELAND DUDEK,**
**Acting Commissioner of the**
**Social Security Administration,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable Irene C. Berger, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Motion for Summary Judgment and Defendant's Brief, seeking judgment on the pleadings. (ECF Nos. 6, 8).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's motion, (ECF No. 6), be **DENIED**; the Commissioner's request for judgment on the pleadings, (ECF No. 8), be **GRANTED**; the Commissioner's decision be **AFFIRMED**;

and this case be **DISMISSED** and removed from the docket of the Court.

## I.    Procedural History

On April 29, 2021, Plaintiff Deanna S. ("Claimant") protectively filed for DIB, alleging a disability onset date of April 29, 2021, due to "diabetes, high blood pressure, high cholesterol, neuropathy, herniated and bulging discs, low mobility, and chronic pain." (Tr. 177, 208). After the Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration, Claimant filed a request for an administrative hearing, which was held on October 4, 2023, before the Honorable M. Drew Crislip, Administrative Law Judge (the "ALJ"). (Tr. 36-57). By written decision dated November 24, 2023, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. 14-35). The ALJ's decision became the final decision of the Commissioner on May 22, 2024, when the Appeals Council denied Claimant's request for review. (Tr. 1-6).

Claimant timely filed the present civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 5). Claimant filed a Motion for Summary Judgment and Brief in Support of Complaint, (ECF Nos. 6, 7), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 8), to which Claimant filed a reply, (ECF No. 9). Consequently, the matter is fully briefed and ready for resolution.

## II.    Claimant's Background

Claimant was 56 years old on her alleged disability onset date and 59 years old on the date of the ALJ's decision. (Tr. 58). She communicates in English, completed two years of college, and previously worked as an administrative assistant, medical secretary, receptionist, and ward clerk. (Tr. 207, 209, 210).

### III.  <u>Summary of ALJ's Decision</u>

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"), found at 20 C.F.R § Pt. 404, Subpt. P, App. 1. *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case

of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents such findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is

4

deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a mental disorder described in the Listing. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for DIB through December 31, 2027. (Tr. 19, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since April 29, 2021, the alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: degenerative disc disease of the lumbar spine, diabetes mellitus with peripheral neuropathy, chronic venous insufficiency (CVI), and obesity. (Tr. 20, Finding No. 3). The ALJ also considered Claimant's hypertension, hyperlipidemia, and anxiety disorder, but the ALJ found that the impairments were non-severe. (Tr. 20-22).

Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. 22-23, Finding No. 4). Thus, the ALJ determined that

Claimant possessed:

> [T]he residual functional capacity to lift, carry, push, and pull 10 pounds occasionally and less than ten pounds occasionally. The claimant can sit for six hours and stand and/or walk for two hours. The claimant can occasionally perform foot controls. She can frequently reach in all directions. She can occasionally climb ramps and stairs, balance (meaning to navigate uneven or slippery terrain), stoop, kneel, and crouch. The claimant can never crawl, work in proximity to unprotected heights, be exposed to extreme temperatures, or vibrations. The claimant can occasionally operate a motor vehicle and be exposed to weather, humidity/wetness, and pulmonary irritants. In addition to normal breaks, the claimant will be off task 5 percent of the time in an eight-hour workday due to distractions of physical symptoms.

(Tr. 23-28, Finding No. 5).

At the fourth step, the ALJ concluded that Claimant could perform her past relevant work as a receptionist, medical secretary, administrative assistant, and accounts receivable supervisor. (Tr. 28-29, Finding No. 6). Consequently, the ALJ decided that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. 29, Finding No. 7).

## IV.    Claimant's Challenge to the Commissioner's Decision

Claimant asserts that "[r]emand is required because the ALJ failed to accommodate [her] proven mild mental limitations or explain why they were omitted from the ALJ's residual functional capacity (RFC) assessment." (ECF No. 7 at 2). In response, the Commissioner argues that non-severe impairments are not expected to limit a claimant's ability to work; further, the ALJ did, in fact, include a mental limitation in Claimant's RFC and explain why no further restrictions were necessary. (ECF No. 8 at 8-16). Claimant maintains in her reply brief that the ALJ omitted proven mental functional limitations without explanation. (ECF No. 9 at 2).

## V.    Relevant Evidence

6

The undersigned thoroughly examined the entire record. The evidence that is most pertinent to Claimant's challenge is summarized below.

### A. Treatment Records

Claimant did not seek specialized mental health treatment during the relevant period. As noted in her clinical records, Claimant was overwhelmingly alert and oriented with normal mood and affect, cooperative attitude, normal thought process and content, and good insight. (Tr. 499, 501, 504, 508-09, 513, 561, 568, 575, 587, 626, 632, 680, 687, 694, 700, 712). Records beginning in 2020 reflected that Claimant's anxiety was stable without any ongoing treatment such as medication or counseling. (Tr. 561, 567, 575, 586, 625, 632, 686, 693, 699, 711).

### B. Prior Administrative Findings

State agency psychologist John Todd, Ph.D., reviewed Claimant's medical records at the reconsideration level of review and found that Claimant had no limitations in the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (Tr. 69). Dr. Todd documented that Claimant "was doing really well" without medication or counseling and that her anxiety was controlled. (Tr. 70).

### C. Function Reports

In October 2021 and April 2022, Claimant reported that she was able to independently manage her personal care without reminders, prepare meals for herself and her husband, do laundry, drive a car, go out alone, shop in stores and by computer, and manage her finances (Tr. 229-33, 273-76). She also confirmed that her conditions did not affect her memory, concentration, understanding, or ability to get along with others

or to follow instructions (Tr. 234, 278). Claimant further reported that she handled stress and changes in routine "very well" (Tr. 235, 279).

### D. Administrative Hearing

Claimant testified that her physical pain "kind of" distracted her. (Tr. 49). Medical expert Richard Cohen, Ph.D., testified that Claimant had "well controlled" anxiety. (Tr. 41). He stated that Claimant was "very stable" cognitively, had no problems with attention, and that any problems she reported with her daily functioning related to physical, not mental, conditions. (Tr. 41). Dr. Cohen concluded that Claimant's mental impairment would cause no work-related limitations. (Tr. 41).

## VI.    Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision

8

is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.    <u>Discussion</u>

Claimant's assertion that the ALJ did not include any mental functional limitations in her RFC or explain why they were unnecessary is unequivocally incorrect. The ALJ thoroughly analyzed Claimant's mental functional abilities, assessed that Claimant would be off task five percent of the workday due to distractions from pain, and explained why no further limitations were warranted.

SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.*

According to SSR 96-8p, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision,

9

coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR § 404.1545(b)-(d).

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id*. at *4.

In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. at *7. While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

As discussed, the ALJ applies a special technique to evaluate mental impairments, which includes rating the severity of functional limitations in the "paragraph B" categories

of (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself. The ALJ uses a five-point scale, ranging from no, mild, moderate, marked, and extreme limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F(2)(a)-(e). As relevant here, a finding of "no limitation" reflects that the claimant is able to function in that category area "independently, appropriately, effectively, and on a sustained basis" whereas a finding of "mild limitation" means that the claimant's ability to do so is "slightly limited." *Id.* at § 12.00F(2)(a), (b).

In this case, the ALJ applied the special technique to evaluate Claimant's anxiety disorder at step two of the sequential evaluation. The ALJ concluded that Claimant's mental status examinations and the longitudinal record showed that she functioned within normal limits or was no more than slightly impaired; however, due to the typical symptomology of her conditions, she would experience interruption in fully effective functionality, at least from time to time. (Tr. 20-21).

In the RFC assessment, the ALJ included a restriction that Claimant would be off task for five percent of the workday due to distractions from pain, such as when medications were wearing off. (Tr. 23, 27, 28).  The ALJ found that no additional mental limitations were warranted. In support, the ALJ discussed that he was persuaded by Dr. Cohen's testimony during the administrative hearing, noting that Dr. Cohen reviewed the record, discussed Claimant's mental health profile, and used his summary to support his opinions with specific reference to the evidence. (Tr. 27). The ALJ cited Dr. Cohen's opinion that Claimant had controlled anxiety previously treated by her primary care provider with medications as well as counseling, which was discontinued, and Claimant did not receive professional mental health treatment. (*Id.*). The ALJ noted Dr. Cohen's

11

conclusion that Claimant's mild functional limitations did not result in work-related psychological limitations. (*Id*.). The ALJ found that Dr. Cohen's opinion was consistent with Claimant's activities of daily living, performance during various examinations, and psychological stability without professional mental health treatment. (*Id*.).

The ALJ further concluded that Dr. Patel's treatment records of Claimant did not contain any discussions or findings to support his opinion that Claimant would have pain or other symptoms that were severe enough to interfere with the attention and concentration needed to perform even simple work tasks. (*Id*.). Rather, the ALJ noted that Claimant was described as having stable mood, a content affect, and being alert and oriented during examinations. (*Id*.). The ALJ remarked that Claimant's treatment records contained normal psychological findings, which was inconsistent with Dr. Patel's posited degree of interference from pain. (*Id*.).

Additionally, in evaluating the prior administrative findings of Dr. Todd, the ALJ reiterated that Claimant's performance throughout the record supports finding a non-severe anxiety disorder. (Tr. 28). For example, the ALJ reiterated that Claimant's primary care records described Claimant as having an anxiety disorder that was controlled without counseling, medications, or ongoing treatment. (*Id*.).

Based on those statements, it is clear that the ALJ found that Claimant's mild paragraph B mental limitations did not result in any further RFC restrictions, and that finding is supported by more than a scintilla of evidence. The ALJ provided a logical bridge from the evidence to his conclusion that no mental RFC restrictions were warranted beyond the off task limitation related to distraction due to physical pain. The decision, particularly when read as a whole, clearly illustrates the ALJ's reasoning that Claimant's anxiety disorder did not result in any work-related limitations. Namely, the

ALJ was persuaded by Dr. Cohen's testimony, which he found to be consistent with Claimant's activities of daily living, normal examinations, and stability of symptoms without any ongoing or specialized mental health treatment. Claimant's assertion that "[a] review of the ALJ's decision shows that ALJ Crislip's analysis in the 'RFC portion' of the decision never makes a SINGLE mention of any of [Claimant's] conclusive mental health conditions" is misguided. (ECF No. 9 at 5). The ALJ explicitly discussed Claimant's anxiety and how it affected her ability to function in a work setting.

Furthermore, it should be noted that the ALJ's RFC discussion of Claimant's mental impairment, although it is not expansive, reflects the minimal mental health information in the record. As the Commissioner emphasized, Claimant did not claim disability due to any mental impairments. (ECF No. 8 at 1, 4) (citing Tr. 63, 208). She also did not allege that she developed any mental health conditions after her disability claim was initially denied and she sought reconsideration. (*Id.*) (citing Tr. 66, 266-72). Her attorney argued that she was limited by physical impairments. (*Id.* at 1) (citing Tr. 40). Claimant testified that she was only "kind of" distracted by pain. (*Id.*) (citing Tr. 49). She "even affirmatively stated to the Agency that her conditions did not affect her memory, concentration, understanding, ability to get along with others, or to follow instructions, noting that she handled stress and changes in routine 'very well.'" (*Id.*) (citing Tr. 234-35, 278-79).

There are no significant subjective complaints, mental source statements, prior administrative findings, or other critical conflicting evidence that the ALJ failed to consider. Indeed, no expert has opined in this matter that Claimant has any mental RFC limitations. The ALJ evaluated the available evidence and determined that Claimant's mild functional limitations did not restrict her RFC, and that finding is supported by

13

substantial evidence.

This matter is distinguishable from recent cases in which this Court found that the ALJ's lack of explanation precluded meaningful review. The Court remanded several cases in which the ALJs did not discuss the claimants' mental impairments or mental functional limitations at all after step two of the sequential evaluation. *Dolly H. v. Kijakazi*, No. 2:22-CV-00573, 2023 WL 6566603, at *7 (S.D.W. Va. Aug. 31, 2023), *report and recommendation adopted,* No. 2:22-CV-00573, 2023 WL 6174413 (S.D.W. Va. Sept. 22, 2023); *Mary S. v. Kijakazi*, No. 2:23-CV-00302, 2023 WL 9007315, at *7 (S.D.W. Va. Aug. 24, 2023), *report and recommendation adopted,* No. 2:23-CV-00302, 2023 WL 9004929 (S.D.W. Va. Dec. 28, 2023); *Jones v. Kijakazi*, No. 5:21-cv-00634 (S.D.W. Va. Sept. 22, 2022), at ECF No. 18, *report and recommendation adopted*, *Jones v. Kijakazi*, No. 5:21-cv-00634 (S.D.W. Va. Nov. 28, 2022), at ECF No. 19; *Shank v. Saul*, No. 3:20-CV-00444, 2021 WL 2767063, at *8 (S.D.W. Va. June 11, 2021), *report and recommendation adopted,* No. CV 3:20-0444, 2021 WL 2744550 (S.D.W. Va. July 1, 2021). Unlike this matter, the ALJs in the preceding cases did not express that a medical opinion informed the RFC analysis. (*Id.*). In some of the cases, the ALJs found that the claimants were even more limited than the state agency experts assessed, yet the ALJs did not proceed to explain why those limitations did not translate into any RFC restrictions. *See, e.g., Dolly H.*, 2023 WL 6566603, at *7; *Mary S.*, 2023 WL 9007315, at *7.

For the above reasons, the undersigned **FINDS** that the ALJ's RFC analysis allows for meaningful review, and his conclusions are supported by substantial evidence.

## VIII.  **Proposal and Recommendations**

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the

findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's Motion for Summary Judgment, (ECF No. 6); **GRANT** Defendant's request to affirm the decision of the Commissioner, (ECF No. 8); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Berger, and Magistrate Judge Reeder.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED: May 7, 2025**



Joseph K. Reeder
United States Magistrate Judge

15